## SQUIRE CLIFTON v. THE STATE.

### No. 1884.  Decided November 9, 1898.

**1.  Assault With Intent to Murder—Evidence Insufficient.**

See opinion for a complete summary of the facts proved which the court hold insufficient to support a verdict and judgment for assault with intent to murder.

**2.  Same—Practice—Duty of Court to Instruct a Verdict of Not Guilty.**

See opinion for facts adduced on a trial for assault with intent to murder upon which the court should have instructed the jury to return a verdict of not guilty.

**3.  Sufficiency of Evidence—Corpus Delicti.**

To sustain a conviction for crime, the evidence must establish the corpus delicti to a degree of certainty greater than a mere probability or strong suspicion.

APPEAL from the District Court of San Augustine.  Tried below before Hon. TOM C. DAVIS.

Appeal from a conviction for assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The indictment charged appellant with assault with intent to murder Bill Sublet, on the 25th day of December, 1897.

The opinion states the case.

*Davis & Davis* and *Jas. T. Polley,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of an assault with intent to murder, and his punishment assessed at two years confinement in the penitentiary; hence this appeal.

There is but one assignment of error that requires notice, to wit, that the evidence does not sustain the conviction.  The case is one of purely circumstantial evidence.  All the testimony that can be said to tend even remotely to show that appellant was the person who fired the shot into the house where the parties were playing cards on the night of the 25th of December, 1897, as we gather from the record, is as follows, to wit:  No one witnessed the shooting.  It occurred at night, the shot coming through a window, and into a house where a number of parties were playing cards. Bill Sublet, the prosecutor, who was standing by the chimney jamb opposite the window through which the shot was fired, was shot through the thigh.  (1) Certain testimony showing that appellant, some three years before the alleged shooting, had a difficulty with the prosecutor, Bill Sublet; but it is shown, without controversy, that the parties had made up this difficulty, and were at the time on friendly terms.  (2) That appellant had a difficulty on the morning of the 25th of December, with Dan Ballard, and subsequently, on the evening of the same day, had a difficulty with Ballard and Price.  At the time of the last difficulty, he had a pistol, 38-caliber, the same size with which the wound was inflicted on Sublet. that night.  (3) The State showed by one witness that defendant had a

pistol when he came there in the morning. The defendant showed, however, that he borrowed the pistol he had from one Harper that day, after he had the difficulty with Ballard in the morning. (4) The State relied upon the tracks. No tracks were shown near the window, but a number of tracks were found in a branch thirty-five or forty yards from the window on that side of the house. It was not claimed that the shot was fired from this point, but through a crack between the sill and the window shutter. Among a number of tracks found in the branch, tracks that resembled appellant's were found; and his shoes were placed in some of the tracks and fitted exactly. (5) A pistol was found that night on the roadside (but not in proximity to defendant), which was identified by one witness as defendant's pistol. All the chambers, however, of this pistol, were loaded, and the witnesses testified that there was no appearance that any of them had been recently discharged. (6) Appellant was shown to have come to the house where the card playing was going on, with one John Holman, about an hour before the shooting, bringing some crackers and canned goods. It was not shown that either Ballard or Price was in the room at this time. Appellant left the room about half an hour before the shooting, stating that he was going to get his supper, about three-fourths of a mile distant. About half an hour after he left, some one fired a shot into the room, inflicting a wound on Sublet, as before stated. Appellant showed that, at the time, he was either at Mr. Bewley's (where he had gone for his supper), or on his way back to the house. He was arrested after the shooting, en route.

This is a summary of all the inculpatory facts which we are able to glean from the record; and, in our opinion, they do not establish with that degree of certainty required by the rules of circumstantial evidence the identity of appellant as being the party who fired the shot into the building on that night. Appellant is not shown to have had any malice against any person in that room. The tracks attributed to him by the State are not shown to be in such juxtaposition to the building as to indicate with any degree of certainty that he was the party who did the shooting. No tracks were found nearer than thirty-five yards of the window; and, when tracks attributed to him were found, they were among a number of other tracks in the branch. If the pistol found was his, the evidence for the State would exclude the idea that it had been recently fired. There is no testimony which places him in proximity to the scene of the shooting at that time. The evidence points with as much probability to John Holman or Colonel Horton as to appellant as being the party who fired the shot into the house; and it may be attributed to any person who may have been about the premises on that night with as much probability as to defendant. The most that can be said of this evidence is that it creates a suspicion against the defendant. But persons in this State can not be convicted on suspicion alone. There must be competent evidence identifying such person with the commission of the offense. We quote from the language of the court in Tollett v. State, 44 Texas, 95, as follows: "To sustain a conviction, it should appear, not only that an

offense as charged has been committed, but there should also be proof tending to establish that the party charged was the person who committed it, or was a participant in its commission, to a degree of certainty greater than a mere probability or strong suspicion. There must be legal and competent evidence pertinently identifying the defendant with the transaction constituting the offense charged against him. It is the duty of the court to require that such legal and competent evidence shall be adduced on the trial, in order to sustain a verdict of guilty." In this case, on the evidence as adduced, the court should have instructed the jury to bring in a verdict of not guilty. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

HURT, Presiding Judge, absent.