ACCEPTED
13-14-00709-CR
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
4/14/2015 9:59:45 PM
DORIAN RAMIREZ
CLERK

# COURT OF APPEALS

## 13th SUPREME JUDICIAL DISTRICT OF TEXAS

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
4/14/2015 9:59:45 PM
DORIAN E. RAMIREZ
Clerk

### CORPUS CHRISTI, TEXAS

**F I L E D**
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI

04/14/15

**DORIAN E. RAMIREZ, CLERK**
BY DTello

## CASE NO. 13-14-00709-CR

### Tr.Ct.No. 13-CR-2682-D(S1)

---

**JUAN MEDINA**  ............................  **APPELLANT**

### VS.

**THE STATE OF TEXAS**  ............................  **APPELLEE**

---

Appealed from the 105th Judicial District Court

Nueces County, Texas

---

## APPELLANT'S BRIEF

---

**RANDALL E. PRETZER, PLLC**

State Bar No. 16279300

P.O. Box 18993

Corpus Christi, Texas 78480

BUS: (361) 883-0499

FAX: (361) 883-2290

E-Mail: RPretzer@Clearwire.net

**ATTORNEY FOR APPELLANT**

## IDENTITY OF PARTIES AND COUNSEL

### JUDGE PRESIDING

THE HONORABLE ANGELICA HERNANDEZ

105$^{\text{H}}$ JUDICIAL DISTRICT COURT

901 LEOPARD STREET

CORPUS CHRISTI, TEXAS 78401

### COUNSEL FOR THE STATE

MS. MICHELLE PUTMAN

ASSISTANT DISTRICT ATTORNEY

901 LEOPARD STREET

CORPUS CHRISTI, TEXAS 78401

### APPELLANT

MR. JUAN MEDINA

TEXAS DEPARTMENT OF CRIMINAL JUSTICE

### APPELLANT'S COUNSEL

MR. RANDALL E. PRETZER, PLLC

ATTORNEY FOR APPELLANT

P.O. BOX 18993

CORPUS CHRISTI, TEXAS 78480

## TABLE OF CONTENTS

**Page**

**IDENTITY OF PARTIES AND COUNSEL** . . . . . . . . . . i

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . ii-iii

**INDEX OF AUTHORITIES** . . . . . . . . . . . . . . . iv

**STATEMENT OF THE CASE** . . . . . . . . . . . . . . 1-3

**STATEMENT OF FACTS** . . . . . . . . . . . . . . . . 3-15

**FIRST SUMMARY OF THE ARGUMENT** . . . . . . . . . . 16

**FIRST POINT OF ERROR** . . . . . . . . . . . . . . . 16

## FIRST POINT OF ERROR

THE EVIDENCE INTRODUCED AT TRIAL WAS FACTUALLY AND
LEGALLY INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION
IN COUNT ONE (1) AGGRAVATED ASSAULT ON A PUBLIC
SERVANT, IN COUNTS (2) AND (3) ASSAULT ON A PUBLIC
SERVANT, ALL IN VIOLATION OF THE DUE PROCESS CLAUSE OF
THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES
CONSTITUTION.

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . 16-22

SECOND SUMMARY OF THE ARGUMENT . . . . . . . . . 22

SECOND POINT OF ERROR . . . . . . . . . . . . . 22-23

## SECOND POINT OF ERROR

THE TRIAL COURT ERRED WHEN IT FAILED TO FIND, <u>SUA SPONTE</u>, THAT THE POLICE OFFICERS UNLAWFULLY DISCHARGED THEIR OFFICIAL DUTIES AS PUBLIC SERVANTS, SUCH ERROR DEPRIVING APPELLANT OF BEING SENTENCED UNDER LESSER INCLUDED OFFENSES OF SIMPLE ASSAULT, ALL IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . 23-27

PRAYER FOR RELIEF . . . . . . . . . . . . . . . 27-28

CERTIFICATE OF SERVICE . . . . . . . . . . . . . 28

CERTIFICATE OF COMPLIANCE, RULE 9.4(i), T.R.A.P. 28

# INDEX OF AUTHORITIES

**Cases:**                                                    **Page**

**Hightower v. State**, 389 S.W.2d 674 (Tex.Crim.
 App.1965) . . . . . . . . . . . . . . . . . . . . . . 17

**Crocker v. State**, 573 S.W.2d 190 (Tex.Crim.App.1978) 17

**Moore v. State**, 531 S.W.2d 140 (Tex.Crim.App.1978.   17

**Houston v. State**, 663 S.W.2d 455 (Tex.Crim.App.1984) 17

**Jackson v. Virginia**, 443 U.S. 307, 99 S.Ct. 2781, 61
 L. Ed.2d 560 (1979) . . . . . . . . . . . . . . . . . 17

**Girard v. State**, 631 S.W.2d. 162, (Tex.Crim.App.
 [Panel Op] 1982) . . . . . . . . . . . . . . . . . . . 17

**Wilson v. State**, 654 S.W.2d 465 (Tex.Crim.App.1985). 18

**Hall v. State**, 158 S.W.3d, 470, 471 (Tex.Crim.App.).
 2005) . . . . . . . . . . . . . . . . . . . . . . . . 23

COURT OF APPEALS

13th SUPREME JUDICIAL DISTRICT OF TEXAS

CORPUS CHRISTI, TEXAS

CASE NO. 13-14-00709-CR

Tr.Ct.No. 13-CR-2682-C(S1)

─────────────────────────────────────────

JUAN MEDINA                                    APPELLANT
                        VS.

THE STATE OF TEXAS                             APPELLEE
─────────────────────────────────────────

Appealed from the 105th Judicial District Court

Nueces County, Texas
─────────────────────────────────────────

APPELLANT'S BRIEF
─────────────────────────────────────────

TO THE HONORABLE 13th COURT OF APPEALS:

STATEMENT OF THE CASE

On July 1, 2014, the Appellant waived his right to a jury trial and proceeded to try his case before the judge alone. (RR, Vol. 2, page 12). On July 1, 2014 the Appellant pled **NOT** guilty to one count of Aggravated Assault on a Public Servant, a first decree felony

1

(Repeat Felony Offender, enhanced and punishable to no less than fifteen years and up to 99 years or life), and **NOT** guilty to two counts of Assault on a Public Servant, each a third decree felony (Repeat Felony Offender, enhanced and punishable as a second degree felony), under Cause No. 13-CR-2682-D(S1), entitled <u>The State of Texas v. Juan Medina</u>. (RR, Vol. 3, pp. 14-17). Subsequently, the state presented to the judge its evidence through testimony and exhibits. Appellant presented to the judge his evidence through testimony. Thereafter, the state and Appellant rested. On July 9, 2014, after deliberation, the judge found Appellant of guilty of all counts under the indictment. (RR, Vol. 4, pp. 5-12). On September 3, 2014, the court again convened to hear evidence during the punishment phase of this trial. The state submitted to the court documentation of Appellant's previous felony and misdemeanor convictions. Thereafter, the state rested and closed, and presented argument to the court regarding sentencing. The Appellant presented his evidence through witnesses' testimony. Thereafter,

Appellant rested and closed, and presented argument regarding sentencing. The court then sentenced Appellant as follows: to fifteen (15) years in prison, under count one, for the offense of Aggravated Assault on a Public Servant; and, to three (3) years in prison, for each the remaining counts, two and three, for the offenses of Assault on a Public Servant. All sentences for each count would run concurrently. (RR, Vol. 4, pp. 5-34).

On October 2, 2014, Appellant filed a <u>Motion for New Trial and Arrest of Judgment</u>. (CR, Vol. 1, page 121).

Appellant perfected his appeal by filing with the District Clerk of Nueces County, Texas, in writing his <u>Notice of Appeal</u>, on November 26, 2014. (CR, Vol. 1, page 140).

<u>STATEMENT OF FACTS</u>

Again, On July 1, 2014, the Appellant waived his right to a jury trial and proceeded to try his case before the judge alone. (RR, Vol. 2, pp. 12). On July 1, 2014 the Appellant pled <u>NOT</u> guilty to one count of Aggravated Assault on a Public Servant, a first decree felony

3

(Repeat Felony Offender, enhanced and punishable to no less than fifteen years and up to 99 years or life), and **NOT** guilty to two counts of Assault on a Public Servant, each a third decree felony (Repeat Felony Offender, enhanced and punishable as a second degree felony), under Cause No. 13-CR-2682-D(S1), entitled <u>The State of Texas v. Juan Medina</u>.

Subsequently, the state presented to the court its evidence through testimony and exhibits.

The first witness called by the state was Sergeant Edward A. Soliz, Corpus Christi Police Department (CCPD), who being sworn, testified as follows: that on or about August 13, 2013, he answered a call regarding a disturbance at 2621 Elgin Street, Corpus Christi, Texas; that his partner, Sergeant Gilbert Casas, had already arrived at the scene of this disturbance and was talking with the complainant, Juan Medina, the father of Appellant; that the father informed the officers that Appellant had just been released from a psychiatric TRIAGE, that Appellant was trying to sell to his father

**4**

some of his medication, and that the father wanted Appellant out of his house since he was in fear for his life; that the father escorted the officers into the house where they found Appellant <u>sitting in a chair</u> (which was against the wall) in a small room about 20 by 20 feet in area; that the father preceded the officers and sat down on a bed to the immediate right of where Appellant was sitting; that Sergeant Soliz then initiated a conversation with Appellant and informed him that his father wanted him to leave his home; that Appellant responded with some profanity directed at the officers and then began to argue with his father regarding the ownership of the medication; that at that time Sergeant Soliz believed that the father might be in danger of his person, so he asked Appellant to accompany the officers outside the home; that Sergeant Soliz then moved in between Appellant and his father and again asked him to accompany the officers outside the home so that they could talk about the situation; that Appellant, according to Sergeant Soliz, then responded, "Don't touch me, if

5

you touch me I am going to kick your fucking ass"; that Sergeant Soliz asked him several more times to leave with the officers so they could talk about the situation; that Appellant continued to curse at the officers and refused to leave; that Sergeant Soliz then informed Appellant that one of the officers would use the TASER if he did not cooperate; that from Sergeant Soliz's testimony it appeared that the TASER failed; that Sergeant Soliz then grabbed Appellant's left arm in an effort to remove Appellant from the home; that Appellant stiffened his position in the chair (wherein he continued to sit); that according to Sergeant Soliz, Appellant's actions forced him to attempt to pull Appellant's left arm behind his back; that Appellant struggled loose from Sergeant Soliz's grip and elbowed him several times; that such action by Appellant's elbow was painful; that during this "elbowing" Sergeant Soliz heard his partner, Sergeant Casa, ejaculate that Appellant had kicked him in the testicular area; that Sergeant Soliz then grabbed Appellant around his neck in an effort to subdue him;

that Appellant slipped out of the neck-hold; that Sergeant Soliz again grabbed Appellant's left arm with both of his hands; that again Sergeant Soliz then lost his grip on Appellant and that was when his arm was pulled out of joint; that Sergeant Soliz heard the popping sound regarding an injury to his right shoulder joint; that he and Sergeant Casas then held Appellant down until back-up police personnel arrive to assist in detaining and transporting Appellant to the Nueces County jail; that Sergeant Soliz was in his police officer's uniform with his badge displayed when this incident began; that Sergeant Soliz as a result of this struggle had to undergo surgery for his shoulder which had resulted in some limitation of the movement of his right arm; that during cross-examination by Appellant's counsel, Sergeant Soliz informed the court that there was no protocol that he knew regarding interacting and, if necessary, arresting a person with mental issues; that Appellant, while sitting in the chair, never made any aggressive moves toward anyone in the 20 by 20 foot room; that Appellant

7

did indeed put his hands behind his back while sitting in the chair; that under cross-examination, Appellant was deemed under arrest when he began to struggle with the officers as they grabbed Appellant and warned him about the possible use of the TASER; that until that time Appellant, from the evidence, was just venting his anger and frustration to all in this small room in his father's home; <u>that Sergeant Soliz denied several times that he ever pulled his service pistol on Appellant</u>; that Sergeant Soliz related that any injury he sustained incurred after Appellant was deemed arrested; that Appellant did not kick or pull his right arm out of joint; and, <u>that such injury occurred when the officers were trying to lift Appellant out of the chair and take him outside to talk</u>. (RR, Vol. 2, pp. 23-73).

The next witness called by the state was Mrs. Rea Strowbridge, physical therapist for Sergeant Soliz, who being sworn, testified as follows: that in her opinion Sergeant Soliz suffered serious bodily injury; <u>that though he suffered such serious bodily injury he was</u>

**still able to work as a policeman despite there being** **was some limitation as to how high he could raise his** **arm**; and, that such limited mobility could be alleviated by minor surgery to remove some bone tissue that would press on muscle tissue when his arm was raised to a certain height. (RR, Vol. 2, pp. 74-81).

The next witness called by the state was Sergeant Gilbert Casas (CCPD), who being sworn, testified as follows: that on the day of the incident he had arrived at the house where Appellant was living with his father; that Appellant's father had informed him that Appellant had just left the psychiatric TRIAGE; that his partner, Sergeant Soliz also arrived at this residence about the same time; that Appellant's father related to the officers that he and Appellant were in an argument about his not buying drugs from Appellant; that Sergeant Casa entered the home and went to the room where Appellant was sitting in a chair; that Appellant was angry, very agitated, and had made threats to beat on Sergeant Soliz; that he then decided that Appellant should be removed

9

from the home and taken outside so that the officers could talk to him; that since the threats continued, he and Sergeant Soliz decided to take Appellant into custody; that Sergeant Casas was on Appellant's right-side and Sergeant Soliz was on his left-side; that Appellant then put his hands behind his back and crossed his legs; that a struggle ensued wherein Sergeant Soliz injured his right-shoulder and that he, Sergeant Casas, was kicked in the groin; that both officers held him down until back-up police personnel arrived to assist them with the arrest and transport of Appellant to the Nueces County jail; that under cross-examination by Appellant's counsel, Sergeant Casas related that it was after Appellant had kicked him in the groin that he attempted to deploy his TASER, but it failed; that his reason for detaining Appellant in the first place was to deal with Appellant's wanting to sell his medication and his father's refusal to return Appellant's medication to Appellant; and, that the detention devolved into an

10

arrest when Appellant allegedly became combative and verbally abusive. (RR, Vol. 2, pp. 82-108).

Thereafter, the state called Senior Officer George Alvarez (CCPD), who being sworn, testified as follows: that on the day of the incident he came to the scene of the confrontation with Appellant as back-up for Sergeants Soliz and Casas; that during the struggle he managed to get Appellant in a head-lock so that he could be handcuffed; that he witnessed Appellant struggling with the other policemen, all of whom were yelling and struggling with each other; that Appellant did yell at Senior Officer Alvarez complaining that he was choking him; that Appellant was very strong; and, that shortly thereafter other officers arrived who placed Appellant in a police vehicle and transported him to the Nueces County jail. (RR, Vol. 2, pp. 109-123).

At that time the state rested.

Appellant called one witness, Robert Jonathan Medina, during the merits of the case, who being sworn, testified as follows: that on that day, he was in the

11

room where Appellant had the confrontation with the police officers; that he saw the two officers when they first arrived and approached Appellant and his father, Juan Medina; that Appellant was sitting at all times in the chair (which later evolved into a love seat); that he had left the room briefly and when he returned he noticed that the older policeman (Sergeant Edward Soliz) was very angry; that Appellant had not made any threatening movements towards the policemen; that suddenly the two policemen approached Appellant and began to struggle with him; that he saw Appellant put his arms behind his back and cross his legs; that he saw the same older policeman (Sergeant Edward Soliz) pull his service pistol and point it at Appellant's abdomen; that the younger officer (Sergeant Gilbert Casas) then attempted to deploy his TASER, but it failed; that he then shouted at the police that the use of a gun was not necessary; that the two officers then grabbed Appellant again and fell on him, all the while he was still on this love seat; that when the other officers arrived they subdued

12

Appellant and removed him from the house; that when he was interviewed by the investigating officer for this case, he did indeed tell him about the older policeman (Sergeant Edward Soliz) pointing his service pistol at Appellant's abdomen; that it was his opinion that there was no way that Appellant could have elbowed or kicked anyone due to his being pressed down onto this love seat; that furthermore there were too many policemen and there was too little wiggle room for Appellant to do much of anything; that during cross-examination by the state the witness was familiar with Appellant's having just returned from the psychiatric TRIAGE; that it was his understanding that Appellant had problems with schizophrenia; that it appeared to him that Appellant was not feeling very well due to the medication which he had received at the hospital; that he did recall Appellant using the "F-word" in the presence of the police; that he did not recall Appellant ever threatening to physically harm anyone; and, that even Appellant's father

13

became upset with the police for their overreacting to the Appellant's demeanor. (RR, Vol. 2, pp. 142-177).

Due to confliction testimony regarding the alleged us of Sergeant Soliz's service pistol, the court requested that the state bring forth for examination the police officer who prepared the written offense report. The state related to the court that the officer who prepared this written offense report was Detective Ramiro Torres. Thereafter, Detective Torres was summoned to appear before the court.

Detective Torres, who being sworn testified as follows: that he prepared the written offense report in this particular case involving Appellant; that he interviewed several witnesses, including Robert Medina; that he recalled that Robert Medina did relate to him that the older officer (Sergeant Edward Soliz) had allegedly pulled his service pistol and pointed it at Appellant's abdomen; <u>that Detective Torres however did NOT include this statement from Robert Medina because he did not think that he was a CREDIBLE witness</u>; that he

14

contended that his reasoning for not including Robert Medina's observations regarding Sergeant Soliz's drawing his service pistol was that none of the other witnesses he interview mentioned this pistol; that though the "recorded statement" contained Robert Medina's pistol observations, it was not included in the narrative statement since such statement was more of a summary and **NOT** a detailed account of the incident; that he felt Robert Medina was ". . . not believable, in my opinion" [RR, Vol. 2, page 183]; that during cross-examination by Appellant's counsel, Detective Torres had a difficult time determining the credibility of Sergeants Soliz and Casas due to their inconsistent statements regarding the attempted use of the TASER, the possible inability of Appellant kicking Sergeant Casas in the groin or precipitating the injury to Sergeant Soliz's shoulder. (RR, Vol. 2, pp. 179-202).

The state rested and closed.

The defense rested and closed.

15

## SUMMARY OF THE ARGUMENT

The state failed to offer sufficient evidence to support the court's finding that Appellant had, beyond a reasonable doubt, committed any of the offenses set forth in counts 1, 2 and 3 of the indictment, all in violation of the 5th and 14th Amendments to the United States Constitution.

## FIRST POINT OF ERROR

THE EVIDENCE INTRODUCED AT TRIAL WAS FACTUALLY AND LEGALLY INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION IN COUNT ONE (1) AGGRAVATED ASSAULT ON A PUBLIC SERVANT, IN COUNTS (2) AND (3) ASSAULT ON A PUBLIC SERVANT, ALL IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

## ARGUMENT AND AUTHORITIES

Appellant contends that the evidence introduced during the trial was insufficient to support his conviction under any of the counts in the indictment.

16

The courts have held that the state always has the burden to prove beyond a reasonable doubt that the accused committed the criminal acts charged in the indictment, Hightower v. State, 389 S.W.2d 674 (Tex.Crim.App.1965). Furthermore, the state being bound by its allegations in the indictment must prove them beyond a reasonable doubt. Crocker v. State, 573 S.W.2d 190 (Tex.Crim.App.1978); Moore v. State, 531 S.W.2d 140 (Tex.Crim.App.1978). The courts have held that in all criminal cases regarding points of error for insufficient evidence, the courts must examine the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Houston v. State, 663 S.W.2d 455 (Tex Crim.App.1984); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Girard v. State, 631 S.W.2d. 162, (Tex.Crim.App. [Panel Op] 1982). In addition, the courts have held that this test for the sufficiency of the evidence would be applied equally to direct and circumstantial evidence

17

cases. <u>Wilson v. State</u>, 654 S.W.2d 465 (Tex.Crim.App.1985).

In this particular case, this honorable Court of Appeals should note the following:

1. That Appellant, prior to his being contacted by the police officers, had just come home from a hospital's <u>psychiatric TRIAGE</u>;

2. That Appellant was on <u>medication</u>;

3. That Appellant appeared to be <u>very agitated</u>;

4. That Appellant appeared to be <u>very angry</u>;

5. That Appellant, other than using bad language, had <u>NOT</u> <u>made any aggressive moves toward the police or</u> <u>his father</u>;

6. That Appellant was the <u>VICTIM</u>, to say the least, of <u>heavy-handed management/conduct by the police</u> <u>officers</u>, who tried to use a TASER on Appellant and who according to Robert Medina, <u>un-holstered and</u> <u>pointed a service pistol at Appellant's abdomen</u>;

7. That this pistol issue was <u>FOR SOME REASON</u> omitted from the detective's investigation report, which could be seen as an effort by the authorities to cover-up unacceptable and unprofessional police conduct;

8. That Appellant appeared from the evidence to have been <u>lodged in the chair (or love seat)</u> during this confrontation with the police, with little ability to inflict any injury on anyone, until he was finally removed from his father's home and taken to the Nueces County jail;

9. That <u>Appellant's father had objected to the way the police dealt with Appellant</u>;

10. That <u>the police made little effort to diffuse this family argument</u>, especially considering Appellant had just been released from a psychiatric TRIAGE;

11. <u>That the police admitted that they had no protocol or procedures to deal with Appellant who they knew had just returned from a psychiatric TRIAGE</u>;

19

12. <u>That the police never considered summoning EMS in an effort to deal with this Appellant who appeared still agitated, angry, on medication, and may not have been rational nor in control of his mental faculties</u>;

13. That Sergeant Edward Soliz, as a senior police officer, <u>clearly appeared to be unable to control his own emotional response to Appellant's bad language</u> -- as if a seasoned officer had never heard such language before or experienced similar volatile incidents after over thirty-four years with CCPD; and,

14. <u>That even the court expressed its reservations regarding the professionalism of the police officer's conduct – using such language, or words to that effect, that the police officer's conduct was heavy-handed, if not excessive</u>. (RR, Vol. 4, pp. 57-62).

Accordingly, the state failed to meet its burden of proof and the court should have found at least that there was, as a matter of law and fact, insufficient evidence to prove the elements of the offense of aggravated assault on a public servant, and prove the elements of assault on a public servant, since Sergeant Soliz who appeared from the record to be ill-tempered, precipitated a **simple detention** of Appellant into a police officer's brawl with this Appellant who had just left a psychiatric TRIAGE. Furthermore, it is Appellant's opinion that Sergeant Casas' injuries did not constitute bodily injury, since he, according to the record, never sought medical attention for the alleged kick in his groin nor was there evidence that he was incapacitated from continuing duties a police officer; and, regarding Sergeant Soliz, his injury required minor surgery, and it was more likely that his age and extended service as policeman made an otherwise minor injury seem worse than it ever actually was.

Your Honors, citizens should not be convicted by inconclusive and ambiguous evidence, which does not meet the <u>very high burden of proof</u> as set forth by the time tested phrases "beyond a reasonable doubt," or "to a moral certainty."

<u>SUMARY OF THE SECOND ARGUMENT</u>

The Appellant contends that the trial court should have found that Appellant was guilty of the lesser included offense of simple assault in each count, since the evidence at trial clearly demonstrated that the police had <u>UNLAWFULLY</u> discharged their official duties as public officials

<u>SECOND POINT OF ERROR</u>

THE TRIAL COURT ERRED WHEN IT FAILED TO FIND, <u>SUI SPONTE</u>, THAT THE POLICE OFFICERS UNLAWFULLY DISCHARGED THEIR OFFICIAL DUTIES AS PUBLIC SERVANTS, SUCH ERROR DEPRIVING APPELLANT OF BEING SENTENCED UNDER LESSER INCLUDED OFFENSES OF SIMPLE ASSAULT, ALL IN VIOLATION

OF THE DUE PROCESS CLAUSE OF THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

## ARGUMENT AND AUTHORITIES

Again, Appellant will repeat those factors previously set forth above, for this honorable Court of Appeals that would support the factual and legal conclusion that the trial court could have and should have found, sui sponte, that the police officers unlawfully discharged their duties as public officers [See, Hall v. State, 158 S.W. 3d 470, 471 (Tex.Crim.App. 2005)]. This case contended that trial courts could permit an instruction to the jury permitting those same jurors to find a defendant guilty of a lesser included offense if there was "some evidence" that the same defendant was guilty of such lesser included offense. In Hall the Court of Criminal Appeals found that the defendant had not offered evidence that the prison officer's conduct was unlawful during his effort to restrain and subdue the Appellant in that case. However,

23

in this particular case, it is Appellant's position that the police officer's conduct was excessive, heavy-handed and without justification, again considering all the following factors:

1. That Appellant, prior to his being contacted by the police officers, had just come home from a hospital's <u>psychiatric TRIAGE</u>;

2. That Appellant was on <u>medication</u>;

3. That Appellant appeared to be <u>very agitated</u>;

4. That Appellant appeared to be <u>very angry</u>;

5. That Appellant, other than using bad language, had <u>**NOT**</u> <u>made any aggressive moves toward the police or his father</u>;

6. That Appellant was the <u>VICTIM</u>, to say the least, of <u>heavy-handed management/conduct by the police officers</u>, who tried to use a TASER on Appellant and who according to Robert Medina, <u>un-holstered and pointed a service pistol at Appellant's abdomen</u>;

7. That this pistol issue was <u>FOR SOME REASON</u> omitted from the detective's investigative report, which could be seen as an effort by the authorities to cover-up unacceptable and unprofessional police conduct;

8. That Appellant appeared from the evidence to have been <u>lodged in the chair (or love seat)</u> during this confrontation with the police with little ability to inflict any injury on anyone, until he was finally removed from his father's home and taken to the Nueces County jail;

9. That <u>Appellant's father had objected to the way the police dealt with Appellant</u>;

10. That <u>the police made little effort to diffuse this family argument</u>, especially considering Appellant had just been released from a psychiatric TRIAGE;

11. That <u>the police admitted that they had no protocol or procedures to deal with Appellant who</u>

25

they knew had just returned from a psychiatric TRIAGE;

12. That the police never considered summoning EMS to attempt to deal with this Appellant who appeared still agitated, angry, on medication, and may not have been rational nor in control of his mental faculties;

13. That Sergeant Edward Soliz, as a senior police officer, clearly appeared to be unable to control his own emotional response to Appellant's bad language -- as if a seasoned officer had never heard such language before or experienced similar volatile incidents after over thirty-four years with CCPD; and,

14. That even the court expressed its reservations regarding the professionalism of the police officer's conduct – using such language, or words to that effect, that the police officer's conduct was heavy-handed, if not excessive. (RR, Vol. 4, pp. 57-62).

The Appellant did indeed at trial present evidence that clearly indicated that this simple detention turned into an unnecessary police brawl with Appellant who apparently had just been released from a psychiatric TRIAGE, who was not stable, who was under medication, and who should have been attended by EMS personnel and returned to the hospital for further treatment.

## PRAYER FOR RELIEF

For **ALL** the reasons stated above, Appellant respectfully requests that the honorable Court of Appeals reverse the trial court's judgment, and render a finding that Appellant is **NOT** guilty of all counts as set forth in the indictment; or, in the alternative, reverse the trial court's judgment and render a judgment wherein Appellant is found guilty of the lesser included offense of simple assault in each count.

RESPECTFULLY SUBMITTED:

/S/   Randall E. Pretzer
Randall E. Pretzer, PLLC
Attorney for Appellant

27

State Bar No. 16279300
P.O. Box 18993
Corpus Christi, Texas 78480
BUS: (361) 883-0499
FAX: (361) 883-2290
E-Mail: RPretzer@Clearwire.net

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Appellant's Brief was hand-delivered to the Nueces County District Attorney's Office, ATTN: Appellant Division, 901 Leopard Street, Corpus Christi, Texas 78401, on April 6, 2015.

/S/   Randall E. Pretzer
Randall E. Pretzer, PLLC
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE
## UNDER RULE 9.4 (i), TRAP

Please be advised that in compliance with Texas Rule of Appellate Procedure 9.4(i)(3), as amended, I certify that the number of words in this brief, excluding those matters listed in Rule 94 (i)(1), is **4,202** as per the computer count.

/S/   Randall E. Pretzer
Randall E. Pretzer, PLLC
Attorney for Appellant